**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **KRISTOFER McDAVID,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 05-cv-0296-MJR** |
| | ) | |
| **MATTHEW DOBLER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM and ORDER**</u>

**REAGAN**, **District Judge:**

**A.  <u>Introduction</u>**

In April 2005, Kristofer McDavid filed suit in this Court, alleging that a St. Clair County Sheriff's Deputy (Matthew Dobler) arrested him (McDavid) without probable cause and with excessive force.  McDavid asserted that these claims violated his federally secured civil rights *and* state common law.  He named three Defendants: (1) Deputy Dobler, (2) Sheriff Mearl Justus, and (3) St. Clair County, Illinois.

Just before trial, McDavid voluntarily dismissed two Defendants (the Sheriff and the County), leaving only his claims against Deputy Dobler.   *See* Docs. 29, 30.

Jury trial commenced July 10, 2006 and culminated in a July 12, 2006 defense verdict. *See* Doc. 37.  Judgment was entered on July 25, 2006, after the Court denied a motion that had been taken under advisement during trial.  *See* Docs. 41, 42.

McDavid timely moved for a new trial on July 31st.  The motion has been fully briefed.  For the reasons described below, the Court DENIES McDavid's motion for new trial.

**B.  <u>Analysis</u>**

**FEDERAL RULE OF CIVIL PROCEDURE 59(a)** provides that in any action where there has been a jury trial, a new trial may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."

That language has been interpreted to mean that a district court may grant a new trial only if the jury's verdict was against the manifest weight of the evidence, or a new trial is necessary to prevent a miscarriage of justice. *See Romero v. Cincinnati, Inc.*, 171 F.3d 1091, 1096 (7th Cir. 1999); *Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995); *Sokol Crystal Products, Inc. v. DSC Communications Corp.*, 15 F.3d 1427, 1432 (7th Cir. 1994).

The law of this Circuit holds:

> A new trial may be granted only if the verdict is against the clear weight of the evidence.... **"[W]e will not set aside a jury verdict if a reasonable basis exists in the record to support that verdict...."** The evidence must be viewed in the light most favorable to the prevailing party, and issues of credibility and weight of evidence are within the purview of the jury.

*Carter v. Chicago Police Officers*, 165 F.3d 1071, 1079 (7th Cir. 1998)(emphasis added). *Accord Cefalu v. Village of Elk Grove*, 211 F.3d 416, 424 (7th Cir. 2000).

McDavid offers seven grounds in support of his new trial motion. First, he contends that the Court erred in allowing amendment of the Final Pretrial Order. Second, he criticizes defense counsel's statements during closing argument. Third, he maintains that the Court erred in asking witness Kristen Amann questions submitted by the jury. Fourth, he asserts that the Court erred in overruling his objections to defense counsel's cross-examination of Dr. David Mitchell. Fifth and sixth, he assigns error to rulings on two jury instructions (Plaintiff's Proposed Instruction 23 and Defendant's Proposed Instruction 35). Finally, he argues that the jury's verdict was against the

manifest weight of the evidence.  Each of these arguments is discussed below, beginning with the issue regarding the amendment to the Final Pretrial Order.

On June 16, 2006, the Court conducted a final pretrial conference and entered a Final Pretrial Order.  Thirteen days later - and still twelve days before trial – defense counsel (who had listed six people on their witness list) moved to amend the Final Pretrial Order to add a seventh – Kristen Amann.

To support the late addition of this witness, defense counsel explained that they had "recently discovered that Kristen Amann possesses knowledge and information that may bear significantly on the claims of Plaintiff," specifically "intimate knowledge of the physical and emotional damages allegedly suffered by Plaintiff" (Doc. 24, p. 1, p. 2).  Defense counsel further noted that *Plaintiff* had neither disclosed Amann under Federal Rule of Civil Procedure (in initial or supplemental disclosures) nor included Amann's name in discovery responses, despite plainly knowing that Amann possessed relevant information regarding Plaintiff's injuries.

Plaintiff's counsel responded that his client (McDavid) had disclosed Amann's name in his September 2005 deposition, identifying Amann as his ex-girlfriend and the mother of his child, and mentioning that Amann had photographed his injuries a few days after the occurrence in question.  Plaintiff's counsel complained that defense counsel should have – right after that deposition and  prior to the March 2006 discovery cutoff – attempted to locate and depose Amann (*see* Doc. 26).  In other words, Plaintiff maintained that defense counsel was aware of Ms. Amann's existence 10 months prior to trial and should not have been permitted to amend the Final Pretrial Order to add her as a witness at the eleventh hour.

In permitting amendment of the Final Pretrial Order, the Court properly found that Plaintiff and his counsel were in a far superior position to Defendant or defense counsel to anticipate Amann's testimony.  The couple had parted acrimoniously, and Plaintiff McDavid had sought an order of protection against Amann.  This undermines Plaintiff's argument that the addition of Amann to the witness list resulted in unfair "surprise" to him.  So does the fact that Plaintiff's counsel knew of Amann's *specific* statements (*i.e.*, what she would testify to regarding Plaintiff "faking" his injuries) on June 29, 2006, when a tape-recorded statement of Amann was delivered to counsel's office (Doc. 26, p. 3).

Jury trial did not commence until July 10, 2006.  Plaintiff's counsel had time (between June 29th and July 10th) to subpoena Amann for deposition.  He chose not to do so.  Plaintiff's counsel could have – before or during trial – obtained supplemental opinions from Plaintiff's treating physicians to rebut Amann's testimony.  He chose not to do so.  He could have sought to continue the July 10th trial date, based on this development.  He chose not to do so.  And Plaintiff's counsel had ample opportunity *at trial* to cross-examine Amann and reveal any prejudice or any "motive to lie" which she harbored as McDavid's ex-girlfriend.

Under the circumstances of this case, the Court properly permitted amendment of the Final Pretrial Order.  Amendment neither contravened Federal Rule of Civil Procedure 16(e) nor justifies a new trial.  The Court rejects this ground for Plaintiff's new trial motion.

Likewise, the Court finds unconvincing Plaintiff's second argument for new trial. Plaintiff maintains that defense counsel's improper statements during closing argument warrant a new trial.  Plaintiff objects to defense counsel's reference (during closing) to the fact that Amann was "scared to death" to take the stand and testify.

-4-

It bears note that defense counsel did not say Amann was scared *of* Plaintiff McDavid, and the jury could have interpreted the remark several ways.  In any event, the Court *sustained* Plaintiff's counsel's objection to this remark.  Plaintiff's counsel could have asked the Court for a curative instruction on this specific point but did not do so.  Therefore, Plaintiff waived his right to complain on this point.

Even assuming the statement was improper <u>and</u> the issue was not waived, Plaintiff's argument is a loser.  The statement was brief and was not repeated.  ***E.E.O.C. v. Board of Regents of Univ. Of Wisc.*, 288 F.3d 296, 304 (7th Cir. 2002).**  Plus, Plaintiff's counsel availed himself of the opportunity – *after* the remark in question – to rebut it.

Moreover, the Court instructed the jury (based on Seventh Circuit Pattern Instruction 1.06) that the lawyers' closing arguments did not constitute evidence.  Jurors are presumed to have followed the Court's instructions.  ***See United States v. Eberhart*, 434 F.3d 935, 939 (7th Cir. 2006); *Whiting v. Westray*, 294 F.3d 943, 946 (7th Cir. 2002); *Jones v. Lincoln Electric Co.*, 188 F.3d 709, 732 (7th Cir. 1999)**.  No substantial prejudice resulted to Plaintiff, and no  "miscarriage of justice" flowed from this remark which would justify a new trial.

Similarly meritless is Plaintiff's third argument for new trial – that the Court erred in asking questions – submitted by the jury – of witness Kristen Amann.  Under questioning by counsel, Amann – the 24-year old ex-girlfriend of Plaintiff McDavid – disclosed the fact that she and McDavid had been through a custody fight for their son.   On redirect examination, defense counsel asked whether Amann anticipated petitioning the state court for child support, if she won custody of the child.  Plaintiff's counsel objected to the relevance of the child support question, and the undersigned Judge *sustained* the objection.

After counsel had concluded their examinations, the Court asked whether the jurors had any questions for Ms. Amann.  The jurors submitted two written questions for Amann:

Is whitnes [sic] employed?
Compensation?

During this trial (and several other civil trials in early 2006), the undersigned Judge allowed jurors to submit written questions for witnesses, after which the Judge discussed those questions at sidebar with counsel, permitting counsel to lodge any objection and make a record, before the Judge decided whether to ask the questions of the witnesses.  The submission of jury questions was done in compliance with (and as part of) the Seventh Circuit Bar Association's "American Jury Project."

Plaintiff's counsel objected generally to this procedure and objected specifically to the jurors' question about whether witness Kristen Amann was employed.  *See* Excerpted Trial Transcript, Volume I, pp. 65-66.  Plaintiff's counsel argued that the question about whether Amann was employed had originated from the unanswered question regarding child support.   The Court decided to ask the question over the objection of McDavid's counsel.  Amann answered that she worked at a family-owned restaurant in Belleville, Illinois ("Geo's Wings") and that she made $4 per hour plus tips.   Counsel were given the chance to follow up with any questions of their own.  Both sides declined to ask any further questions, and the witness was excused.

In the motion for new trial, McDavid maintains that the Court's asking the jury questions regarding Amann's employment and compensation "negated" the Court's "prior ruling sustaining Plaintiff's objection to any inquiry concerning her finances" (Doc. 43, p. 3).   This statement is overbroad and inaccurate.

The Court sustained an objection to defense counsel's question regarding whether

-6-

Amann intended to seek child support if she won the custody fight.  But Plaintiff's counsel did not object to (and the Court did not sustain any objection on) the broad topic of Amann's "finances."  Thus, the jury questions regarding Amann's employment/salary did not run afoul of the Court's earlier ruling as to whether – *if* Amann won the custody dispute – she would file a petition for child support.  Indeed, as the Court noted at trial, it was unclear whether the jury's questions had anything at all to do with the aborted question regarding child support.

Moreover, the information regarding Amann's job and pay – while *arguably* irrelevant – did not substantially prejudice Plaintiff McDavid.  At the very worst, the jury's inquiry into Amann's employment constituted harmless error which does not warrant a new trial.  ***See Romero*, 171 F.3d at 1095-96.**

McDavid's next argument is likewise unavailing.  Admission of testimony of Dr. David Mitchell (from his June 2006 deposition) did not substantially prejudice McDavid or constitute a miscarriage of justice.  McDavid takes issue with the Court's admission of the Mitchell testimony as "there was no medical evidence of history that Plaintiff ever suffered from the condition" (Doc. 43, p. 3).  But Mitchell did *not* testify that Plaintiff had carpal tunnel syndrome.  Rather, Mitchell only stated that carpal tunnel syndrome could cause symptoms *similar to* those about which Plaintiff complained.

Indeed, on cross-examination, Mitchell (a) conceded that McDavid's injuries were acute, *unlike* carpal tunnel syndrome, and (b) clarified that there was no evidence McDavid suffered from carpal tunnel syndrome.  This is not a case in which evidence of a "pre-existing condition" was improperly introduced.  Mitchell's testimony does not justify the grant of a new trial.

McDavid takes issue with two jury instruction rulings.  First, McDavid asserts that

-7-

the Court erred in refusing his (McDavid's) Proposed Instruction 23, which read:

> Except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable and without probable cause.

McDavid emphasizes that this instruction was supported by the case ***Delaware v. Prouse*, 440 U.S. 648 (1979),** which delineates "when a police officer may properly stop and detain a motorist" (Doc. 43, p. 4). Defense counsel counters – as he did during the instruction conference – that ***Delaware v. Prouse*** involved a question of when moving vehicles on highways could be stopped by patrolmen, facts critically distinguishable from those in the instant case (Doc. 45, p. 10). In the instant case, Deputy Dobler did not stop McDavid's car or signal McDavid to pull over the vehicle. To the contrary, McDavid's car was already stopped with the engine turned off, and Dobler actually exited his vehicle when he encountered Deputy Dobler.

***Delaware v. Prouse*** addressed the constitutionality of random spot checks of vehicles traveling on highways. The Court held that the state's interest in discretionary spot checks as a means of ensuring the safety of the public roadways did not outweigh the intrusion on the privacy and security of the persons detained in the process. ***Id.*, 440 U.S. at 663.** That holding had limited, if any, applicability to the issues in the case at bar.

More significantly, McDavid has not met his burden to secure a new trial based on an allegedly erroneous jury instruction. To receive a new trial on this ground, the movant must demonstrate "both that the instructions did not adequately state the law and that the error was prejudicial to [him] because the jury was likely to be confused or misled." ***U.S. v. White*, 443 F.3d**

582, 587-88 (7th Cir. 2006), *cert. denied,* – U.S. –, 2006 WL 2308230 (Oct. 2, 2006), *citing Boyd v. Illinois State Police*, 384 F.3d 888, 894 (7th Cir. 2004).  When assessing whether prejudice has resulted, the Court must consider the instructions as a whole, along with *all* the evidence and arguments in the case, and then decide whether the jury was misinformed about the applicable law.  *White*, 443 F.3d at 587-88, *quoting Boyd*, 384 F.3d at 894.

McDavid has not demonstrated the inadequacy of the instructions given to the jury. And he has certainly not shown that he was prejudiced by jury confusion (resulting from the Court's refusal to give his Proposed Instruction 23 or otherwise).  The same analysis dooms McDavid's argument that the Court erred in giving Defendant's Proposed Instruction 35.

Defendant's 35 – which included the statement that an unlawful detention does not occur simply because a police officer approaches an individual and asks a few questions – did not misstate applicable law, misinform the jury, or otherwise prejudice Plaintiff McDavid.  The instruction further stated that – for McDavid to prevail on his unlawful detention claim – the jury must find that Defendant Dobler's actions were unreasonable "given the totality of the circumstances."  This, too, is an accurate statement of governing precedent.  A new trial is not warranted based on either of the challenged instruction rulings.

Which leaves McDavid's contention that the jury's verdict was against the manifest weight of the evidence.  To satisfy this standard, McDavid must demonstrate that no rational jury could have rendered a verdict against him.  *King v. Harrington,* 447 F.3d 531, 534 (7th Cir. 2006), *citing Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 926 (7th Cir. 2004).

Under this standard, the Court must view the evidence in the light most favorable to

Defendant Dobler, "leaving issues of credibility and weight of evidence to the jury." *King*, **447 F.3d at 534**, *citing Kapelanski v. Johnson*, **390 F.3d 525, 530 (7th Cir. 2004)**.

    In the case *sub judice*, the evidence plainly provided an ample basis for the jury's verdict. Stated another way, a rational jury certainly could have found in favor of Defendant Dobler and against Plaintiff McDavid. A reasonable basis exists in the evidentiary record to support the jury's verdict. The verdict was not contrary to the manifest weight of the evidence.

### C. Conclusion

    For all these reasons, the Court **DENIES** Plaintiff McDavid's motion for new trial (Doc. 43).

    **IT IS SO ORDERED.**

    **DATED this 27th day of October 2006.**

           **s/ Michael J. Reagan**
           **MICHAEL J. REAGAN**
           **United States District Court**